IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01971-GPG-NRN

JAMES BERNS,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

**ORDER
GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR ISSUANCE OF CERTIFIED
QUESTION TO THE COLORADO SUPREME COURT PURSUANT TO C.A.R. 21.1
(ECF No. 55)
and
CERTIFYING QUESTION TO THE COLORADO SUPREME COURT**

---

**N. REID NEUREITER
United States Magistrate Judge**

## BACKGROUND

The magistrate judges and district judges of the District of Colorado have been vexed by an ongoing Colorado state insurance law question that arises with regularity in the discovery context. The issue is as follows:

In an insurance bad faith lawsuit, there is a perceived tension between two conflicting doctrines. On the one hand is the so-called "suspension rule," which arguably states that the insurer's duty to settle or resolve a claim is suspended once a lawsuit or arbitration is filed and there is a genuine disagreement about the amount of compensable damage. *See Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.,* 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012); *see also Bucholtz v. Safeco Ins. Co. of Am.,* 773 P.2d 590,

593–94 (Colo. App. 1988) (obligation to negotiate as a reflection of good faith is suspended when insured demands arbitration); *Johnston v. Standard Fire Ins. Co.*, No. 20-cv-02106-CMA-MEH, 2022 WL 1225311, at *4 (D. Colo. Apr. 25, 2022) (where lawsuit had been filed, and there was disagreement regarding damages at the time suit was filed, insurer's duty to negotiate, settle, or pay claim is suspended).

On the other hand is the arguably conflicting principle that an insurer has a continuing duty to act in good faith towards the insured, and that duty continues even after litigation is filed. *See Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) ("This duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith."); *see also Lynn v. State Farm Mut. Auto. Ins. Co.*, 748 F. Supp. 3d 1030, 1034 (D. Colo. 2024) (noting the insurer's continuing duty of good faith and fair dealing, even through litigation, and the countervailing principle that litigation suspends some "but not all" of the insurer's duties to its insured).

The problem arises in the context of pre-trial discovery where a plaintiff-insured seeks access to the post-litigation claim files of the insurer, wanting to know how or whether the insurer continued to evaluate the claim even after the filing of the lawsuit as new information is learned or produced in discovery. Insurers resist such discovery, arguing that once a lawsuit is filed, the claim file necessarily fills with attorney-client privileged material and attorney work product, and because under the suspension rule, once a lawsuit is filed, there is no obligation to continue to evaluate or settle the claim

2

because the plaintiff has elected to have the fact-finder decide how much, if any, is owed. Plaintiffs, on the other hand, assert that they should be entitled to know whether the insurer has fulfilled its duty to act in good faith in evaluating a claim, even after the filing of litigation.

The tension between these two competing positions is fully described in the decision of this Court in *Cunningham v. Travelers Home and Marine Insurance Co.*, 781 F. Supp. 3d 1263 (D. Colo. 2025). That opinion recounts multiple inconsistent decisions by Colorado federal judges on the precise question that arises in the instant case; namely, when, and under what circumstances, is post-litigation discovery of an insurer's claim file and decision-making discoverable in a bad faith insurance case? *See Cunningham*, 791 F.Supp.3d at 1266–69 (relating in detail the decisions of Judges Arguello, Wang, and Magistrate Judge Neureiter finding *against* post-filing discovery on the one hand, and the decisions of Judge Blackburn and Magistrate Judges Starnella and Dominguez-Brazwell *in favor* of such discovery on the other).

One of the arguments against allowing discovery of post-litigation material was provided by Judge Arguello. Not only are such documents not relevant, but:

> from a practical standpoint, requiring production of post-litigation claim notes would necessarily result in inconsistent discovery obligations between parties. Once an insured files suit, insurers are required to defend against claims of breach of contract and bad faith, and they are subject to the discovery rules and deadlines set by courts. If insurers are required to continue to evaluate claims post-litigation and provide information to plaintiffs, plaintiffs could simply circumvent discovery rules and deadlines by submitting new information and demanding an insurer's post-litigation analysis. This is not what the law requires. To hold otherwise would incentivize plaintiffs to rush to the courthouse to file a lawsuit and then continue to submit records to insurers in an attempt to avoid the discovery process.

3

*Johnston*, 2022 WL 1225311 at *4 (sustaining objections and overruling Magistrate

Judge Hegarty's discovery order allowing discovery). In stark contrast is a decision by

Judge Blackburn allowing an insurer's representative to be deposed on post-lawsuit

claim handling:

> Assuming the claim of Mr. Bise in this case is fairly debatable, American
> Family's duty to negotiate the claim is suspended until that debate is
> resolved in this litigation. That suspension, however, does not mean
> evidence of American Family's post-litigation handling of the claim of Mr.
> Bise is irrelevant to his claims of breach of insurance contract, unreasonable
> delay or denial of benefits, and common law bad faith. Rather, evidence of
> American Family's post-litigation claim handling arguably is relevant to all
> three of these claims. That evidence is relevant to a determination of
> whether American Family's position in the debate is correct or incorrect.
> Evidence of American Family's post-litigation claim handling has a tendency
> to make consequential facts related to all three claims "more or less
> probable" than they "would be without the evidence." Fed. R. Evid. 401(a).
> Of course, relevant evidence is discoverable.

*Bise v. Am. Fam. Ins. Co.*, No. 22-cv-03270-REB-KAS, 2024 WL 3023549, at *5 (D.

Colo. May 7, 2024).

This is an issue that arises in federal court with regularity because of the

frequency with which insurance cases are removed from state court on diversity

grounds. It is also an issue not likely to percolate up to the Tenth Circuit Court of

Appeals or the Colorado Supreme Court for resolution because of the great deference

given to trial judges in discovery matters. But notwithstanding the deference given to

trial judges (or magistrate judges) in discovery matters, the apparent tension between

these two doctrines in the discovery context cries out for resolution by Colorado's

Supreme Court. Parties (and judges) regularly spend undue time and money fighting in

the pretrial context about a legal question that should be resolved once and for all by

the Colorado Supreme Court. Or, if the issue cannot be resolved with finality, some

guidance should be provided so that litigating parties and judges can better understand and apply these competing principles in particular cases. There are multiple secondary questions that flow from the underlying question, such as whether the insurer is required to produce a post-litigation privilege log, or whether a plaintiff taking an insurer's deposition under Rule 30(b)(6) is entitled to ask questions about how information produced in the litigation discovery process was incorporated or evaluated by the insurance adjuster.

## CERTIFICATION OF QUESTION TO THE COLORADO SUPREME COURT

Under Colorado Appellate Rule 21.1(a), when requested, the Colorado Supreme Court may answer questions of law certified to that court by a federal court "if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court." Such legal questions are determined de novo by the Colorado Supreme Court. *See generally Hernandez v. Ray Domenico Farms, Inc.*, 2018 CO 15, ¶ 5, 414 P.3d 700, 702.

At a discovery hearing held in this case on February 2, 2026, this Court again confronted the question of whether a plaintiff in an insurance bad faith case is entitled to discovery of the insurer's post-litigation claim notes. *See* ECF No. 46 (Statement of Joint Discovery Dispute, laying out the factual background of the discovery dispute and the Parties' respective positions). It is a question that merits certification to the Colorado Supreme Court.

5

## RELEVANT FACTS OF THIS MATTER

The relevant facts of this case are similar to the usual circumstances under which this issue arises.

The plaintiff, James Berns, was injured in a car accident caused by a third party. The third party was insured by GEICO and GEICO offered its policy limits on or around April 18, 2022. Mr. Berns had uninsured/underinsured motorist coverage issued by the Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Mr. Berns requested that State Farm pay his underinsured motorist benefits up to his policy limit of $250,000. State Farm responded to the demand advising Mr. Berns that, based on the nature of the accident, it had questions concerning the causal relationship between his claimed injuries and the accident.

Through 2022 and into 2023, Mr. Berns, through counsel, corresponded with State Farm providing information, including medical records, and asking for a breakdown of State Farm's evaluation. On March 30, 2023, State Farm sent a letter saying it had determined that the value of the claim was within the availability limits of the responsible party and that there was no underinsured exposure. There was additional correspondence into 2024 with Mr. Berns' counsel which questioned the medical records that State Farm had used to evaluate the claim and asking for a reevaluation because there were now two doctors who recommended a cervical fusion surgery for Mr. Berns.

In April 2024, Mr. Berns' counsel sent a list of medical providers Mr. Berns had seen for the five years prior to the accident, and again requested State Farm continue its investigation of the claim. On April 23, 2024, Mr. Berns, through counsel, sent a letter

6

to State Farm requesting that State Farm extend or toll the statute of limitations as it was likely to run in May 2024. State Farm declined to toll the statute of limitations and Mr. Berns sued in Colorado state court on May 10, 2024, bringing claims of (1) breach of contract for UIM contract benefits; (2) common law bad faith breach of insurance claim; and (3) violations of Colo. Rev. Stat. §§ 10-3-1115(1)(A) and 10-3-1116(1) for unreasonable delay or denial of a claim. State Farm says that it was still waiting for pre-accident medical records when Mr. Berns filed the lawsuit.

After the filing of the lawsuit, State Farm obtained additional pre-accident medical records in April 2025 and proceeded with two Independent Medical Examinations ("IME"). One IME doctor determined that Mr. Berns' left carpal tunnel syndrome and left cubital tunnel syndrome were not caused by the motor vehicle accident. State Farm also obtained an IME to evaluate Mr. Berns' cervical spine injury and possible surgery. The second IME doctor determined that Mr. Berns' cervical symptoms after June 2020 could not be related to the motor vehicle accident. State Farm has provided Mr. Berns with copies of the two IME reports.

Mr. Berns argues he is entitled to see State Farm's post-litigation claim file and that the so-called "suspension rule," if it even exists, cannot justify the withholding of information that is presumed discoverable. State Farm argues that Mr. Berns' demand for disclosure of post-litigation is not justified. Says State Farm, because the insurer's duty to negotiate, settle, or pay an insured's claim is suspended when an adversarial pleading is filed and there is a genuine disagreement as to the amount of compensable damages, post-litigation claim notes are irrelevant and should be protected from discovery.

## THE CERTIFIED QUESTION

At the February 2, 2026 discovery hearing—knowing the frequency with which the matter arises in this District and the inconsistent decisions issued by the various judges and magistrate judges on the question, but wedded to its prior decision in *Cunningham,* the Court asked counsel whether Mr. Berns would be interested in certifying the issue to the Colorado Supreme Court. *See* ECF No. 51 at 16–18. In response, on March 12, 2026, Mr. Berns filed an unopposed motion for issuance of a certified question to the Colorado Supreme Court pursuant to C.A.R. 21, ECF No. 55, which was referred by Judge Gordon P. Gallagher, ECF No. 56.

It is hereby **ORDERED** that the unopposed motion is **GRANTED**, and the Court **CERTIFIES** the following question of law to the Colorado Supreme Court:

> *In an insurance bad faith case, there appear to be two competing principles: the "suspension rule" and the rule that an insurer owes a continuing duty of good faith to its insured that continues after the filing of a lawsuit. In the face of these two principles, when and to what extent is discovery allowed into an insurer's post-litigation claim notes or claim file, and its post-litigation evaluation of the claim?*

The Court finds that this is a question of law that may be determinative of the issue now pending in this certifying court, *see* C.A.R. 21.1(a); namely, whether the discovery sought by Mr. Berns should be permitted. On this question, there is no controlling precedent in the decisions of the Colorado Supreme Court.

It is further **ORDERED** the Clerk of Court shall forward this Certification Order under this Court's official seal to the Supreme Court of Colorado. Included with this Certification Order should be a copy of the following entries from the docket in this case: ECF No. 7 (Complaint and Jury Demand); ECF No. 46 (Joint Statement of Discovery Dispute and all exhibits thereto); ECF No. 51 (Transcript of Discovery Hearing); ECF

No. 55 (Unopposed Motion for Issuance of Certified Question), as well as a copy of the

opinion in *Cunningham v. Travelers Home and Marine Insurance Co.*, 781 F. Supp. 3d

1263 (D. Colo. 2025).

It is further **ORDERED** that this case is **STAYED** until further Order of Court.

Should the Colorado Supreme Court accept the certified question of law, the stay will

remain in place. Should the court decline to answer the certified question, the parties

shall promptly contact the undersigned's chambers to schedule a status conference.

So ORDERED this 17th day of March, 2026.

N. Reid Neureiter
United States Magistrate Judge